UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON R. TRIPET DIEL,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>    Defendant. | Case No. CV 11-2397-SP<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## INTRODUCTION

On March 30, 2011, plaintiff Jason R. Tripet Diel filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of Supplemental Security Income ("SSI") disability benefits. Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties' briefing is now complete, and the court deems the matter suitable for adjudication without oral argument.

Two issues are presented for decision here: (1) whether the new evidence submitted to the Appeals Council requires remand to the Administrative Law Judge

("ALJ") per 20 C.F.R § 404.970; and (2) whether the ALJ properly evaluated plaintiff's credibility and subjective symptoms. Pl.'s Joint Stipulation ("JS") at 3-17, 17-19, 20-24, 25-26; Def.'s JS at 1-7, 7-12.

Having carefully studied, inter alia, the parties' written submissions and the Administrative Record ("AR"), the court finds that the ALJ properly rejected plaintiff's credibility based upon clear and convincing reasons. The court also finds, however, that in light of the new evidence, the ALJ's finding that plaintiff failed to demonstrate changed circumstances indicating greater disability is not supported by substantial evidence. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## BACKGROUND

Plaintiff, who was twenty-seven years old on the date of his March 12, 2009 administrative hearing, has a college degree in anthropology and no past relevant work. *See* AR at 16, 27, 98. Plaintiff alleges he is disabled due to cerebral palsy, Marfan syndrome, preauricular cysts, fibromyalgia, asthma, and depression. *Id.* at 100, 158.

Plaintiff has filed a total of two applications for SSI: a prior application on October 12, 1999, and the SSI application at issue herein. *See* Pl.'s JS at 1-2; AR at 50. In the October 1999 application, plaintiff alleged that he had been disabled since October 13, 1981 due to cerebral palsy and Marfan's syndrome. *See* Pl.'s JS at 1-2; AR at 50-51. His application was denied initially, after which he filed a request for a hearing. *See* AR at 51. On February 9, 2004, plaintiff, proceeding pro se, appeared and testified at a hearing before ALJ Kevin M. McCormick. *Id.* ALJ McCormick denied plaintiff's request for benefits on September 24, 2004. *Id.* at 50-74.

On February 6, 2007, plaintiff filed the application for SSI at issue here,

1  alleging that he has been disabled since October 1, 2004 due to cerebral palsy,
2  Marfan syndrome, preauricular cysts, fibromyalgia, asthma, and depression. *See*
3  AR at 100, 132-38, 158. Plaintiff's application was denied initially, after which he
4  filed a request for a hearing. *Id.* at 82, 100-04, 110.

5      On March 12, 2009, plaintiff, represented by counsel, appeared and testified
6  at a hearing before the ALJ. AR at 25-44. On October 16, 2009, the ALJ denied
7  plaintiff's request for benefits. *Id.* at 86-99.

8      The ALJ noted plaintiff's previous SSI application that was denied by ALJ
9  McCormick on September 24, 2004. AR at 86. Applying a presumption of
10 continuing non-disability pursuant to *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir.
11 1988), the ALJ concluded that plaintiff had failed to show "changed circumstances"
12 from the date of the prior decision to warrant a change in ALJ McCormick's
13 findings. AR at 87.

14     The ALJ engaged in the well-known five-step sequential evaluation process
15 and found, at step one, that plaintiff has not engaged in substantial gainful activity
16 since September 24, 2004 – the date of ALJ McCormick's prior decision. AR at 89.

17     At step two, the ALJ found that plaintiff "continues to have the following
18 conditions of ill-being: Marfan's syndrome, scoliosis of the thoracic spine,
19 headaches, cerebral palsy and asthma."[1/] AR at 89 (emphasis omitted).

20     At step three, the ALJ determined that plaintiff "continues to not have an

---

[1/] Marfan syndrome is defined as:
one of the manifestations of abnormal fibrillin metabolism, a congenital disorder of connective tissue characterized by abnormal length of extremities, especially fingers and toes, subluxation of the lens, cardiovascular abnormalities (commonly dilation of the ascending aorta), and other deformities. It is an autosomal dominant disorder with variable degrees of expression, caused by mutations in the FBN1 gene, which encodes fibrillin-1.

*Dorland's Illustrated Medical Dictionary* 1838 (32nd ed. 2012).

impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." AR at 92 (emphasis omitted).

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[2/] and determined that he continues to retain the ability to: lift and carry twenty pounds occasionally, and ten pounds frequently; sit, stand, and walk without significant limitation; but must avoid respiratory irritants, unprotected heights, and dangerous machinery. AR at 92.

The ALJ found, at step four, that plaintiff continues to have no past relevant work. AR at 98.

At step five, based upon plaintiff's vocational factors and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." AR at 98 (emphasis omitted). The ALJ therefore concluded that plaintiff was not suffering from a disability as defined by the Social Security Act. *Id.* at 88, 99.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. AR at 1-5, 10. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

---

[2/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.  The New Evidence Demonstrates Changed Circumstances Indicating A Greater Disability**

Plaintiff contends that subsequent to the ALJ's unfavorable October 2009 decision, he submitted "new and material evidence" to the Appeals Council that supports his alleged new medical conditions and documents a decline in his medical condition from 2005 to 2010. Pl.'s JS at 6. The court agrees, in part, and finds that the newly submitted evidence does document a decline in plaintiff's medical

condition that lasted for at least twelve months, and therefore this new evidence may have changed the ALJ's finding that there were no changed circumstances in plaintiff's condition.

A district court "consider[s] on appeal both the ALJ's decision and the additional material submitted to the Appeals Council." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (citations omitted). The district court may remand a case to the Commissioner for consideration of new evidence, but may do so only when the new evidence is material. *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990). Evidence is material "where there is a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination had it been before him." *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (internal quotation marks, emphasis, and citation omitted); *see also* 42 U.S.C. § 405(g) (the district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence [that] is material"). Moreover, the evidence must "relate[] to the period on or before the date of the [ALJ's] decision." 20 C.F.R. § 416.1476(b)(1).

Here, the ALJ found based upon *Chavez* that plaintiff failed to demonstrate changed circumstances since the date of ALJ McCormick's unfavorable decision on September 24, 2004. *See Chavez*, 844 F.2d at 693. "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez*, 844 F.2d at 693 (citation omitted). Administrative res judicata applies if the Commissioner has "made a previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. § 416.1457(c)(1).

A previous final determination of non-disability creates a presumption of

continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996); *see also Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985); *Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 568-69 (9th Cir. 1983); Social Security Acquiescence Ruling ("SSAR")[3] 97-4(9), 1997 WL 742758. "[I]n order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, [the claimant] must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). In other words, the presumption of non-disability does not apply if, e.g., the claimant proves "a change in the claimant's age category . . . , an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability." SSAR 97-4(9), 1997 WL 742758, at *3.

Thus, the question is whether there is a reasonable possibility that the newly submitted evidence would have changed the ALJ's finding that there were no changed circumstances in plaintiff's condition indicating a greater disability. The relevant period here is September 24, 2004 (date of ALJ McCormick's unfavorable decision) to October 16, 2009 (date of the ALJ's unfavorable decision at issue here). *See* 20 C.F.R. § 416.1476(b). In this case, the ALJ found that:

> it does appear that [plaintiff] may have developed dural ectasia, an enlargement of the dural sac of the spinal cord, a condition also associated with Marfan's syndrome. This condition appears to have

---

[3] The Commissioner issues SSARs when a "United States Court of Appeals['] holding conflicts with [the Commissioner's] interpretation of a provision of the Social Security Act or regulations." 20 C.F.R. § 416.1485(b). SSARs are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(2); *accord Pinto v. Massanari*, 249 F.3d 840, 844 n.3 (9th Cir. 2001).

7

   caused severe spasticity, primarily in [plaintiff's] cervical area and
   resulted in severe pain[,] . . . [which] is confirmed by an October 2006
   x-ray study revealing straightening of the cervical lordosis.  Moreover,
   consistent with severe pain, these symptoms were treated aggressively,
   with trigger point and epidural injections as well as Botox injections,
   cervical ablation, among other[] therapies.  On its face, this would
   suggest a worsening of [plaintiff's] Marfan's syndrome and/or his
   medical condition overall.  However, the medical record fails to
   establish that the severe symptoms associated with . . . the ectasia
   persisted for 12 months, or more, as required.  This increase in pain
   symptoms was first reported in March 2006[,] . . . [and plaintiff]
   continued the aforementioned aggressive pain management only until
   February 2007, when treatment records apparently cease.

AR at 93 (citations omitted).

  Having carefully reviewed the record and the newly submitted medical evidence, the court finds that there is a reasonable possibility that the new evidence would have changed the ALJ's finding.  Specifically, contrary to the ALJ's finding that an "increase in pain symptoms was first reported in March 2006" and plaintiff "continued the . . . aggressive pain management only until February 2007" (AR at 93), the newly submitted evidence documents further ongoing aggressive treatment continuing through 2010.  For instance, on March 15, 2007, plaintiff underwent a "diagnostic injection for the left-sided low back pain," which revealed plaintiff's "L4-5 and L5-S1 facet joints were mostly tender." *Id.* at 606-07.  On April 5, 2007, plaintiff underwent "Left L3, L4, L5, and S1 medial branch pulsed radiofrequency ablation and medial branch nerve block." *Id.* at 605-06.  During a followup visit on May 10, 2007, Albert Y. Leung, M.D. opined that "most of [plaintiff's] pain at this juncture is in the paraspinous muscles." *Id.* at 604.  Plaintiff underwent bilateral paraspinous muscle trigger point injections on May 31, June 28, and August 24,

2007. *Id.* at 600-01, 601-02, 603. Thus, the new evidence does, in fact, demonstrate symptoms that persisted for at least twelve months – starting March 2006 and continuing beyond February 2007 – which were managed using various aggressive treatments.

But the court finds that the newly submitted evidence fails to demonstrate the existence of an impairment not previously considered. *See* SSAR 97-4(9), 1997 WL 742758, at *3. Plaintiff claims that "[f]ibromyalgia and depression were new medical conditions not previously alleged in the prior application," and that the "new medical evidence demonstrat[es] that he had fribromyalgia and depression." Pl.'s JS at 6. According to plaintiff, treatment records from Wade Wong, D.O. "demonstrate that he had fibromyalgia." *Id.* While true that some of the evidence indicates Dr. Wong diagnosed plaintiff with fibromyalgia,[4] the ALJ had already considered Dr. Wong's diagnosis and rejected it because "this diagnosis was made by a pain management specialist, not a[] doctor with particular expertise with respect to fibromyalgia, such as a rheumatologist or neurologist." AR at 90; *see Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("Additional factors relevant to evaluating any medical opinion . . . include . . . the specialty of the physician providing the opinion. . . ."); *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) (generally more weight is given to specialists than to the opinion of a medical source who is not a specialist). Moreover, the ALJ noted that "the record fails to demonstrate that this diagnosis was made based upon standards established by the American College of Rheumatology for establishing fibromyalgia, including trigger and control point testing, and excluding other potential causes of generalized muscle and joint pain." AR at 90. Indeed, Dr. Wong's notes are conclusory and are

---

[4] *See, e.g.*, AR at 593 (on a September 4, 2009 treatment note, Dr. Wong assessed plaintiff with "[m]yofascial pain in part probably related to underlying fibromyalgia" and "[g]eneralized muscle aching consistent with a history of fibromyalgia").

9

devoid of any indication of the standards used to arrive at his diagnosis of fibromyalgia. *See id.* at 593, 596, 599.

Plaintiff also argues that contrary to the ALJ's finding that "'there is a lack of reliable psychiatric evidence demonstrating the presence of a 'severe' psychiatric impairment at times material thereto,'" the new evidence submitted to the Appeals Council contains medical records from Mayur C. Patel, M.D., Tigran I. Gevorkian, M.D., and Benjamin M. Lasky, Ph.D. that demonstrate a history of ongoing treatment for depression from 2008 and 2010. Pl.'s JS at 14-15. The court disagrees and finds this evidence non-material.

Although Dr. Patel did diagnose plaintiff with depression in several of the treatment notes, the majority of these records are not new and were in fact considered by the ALJ. *Compare* AR at 577 *with* AR at 500; AR at 581 *with* AR at 504; AR at 562-63 *with* AR at 496-97. Further, the ALJ noted that "there is no record of [plaintiff] actually receiving any sustained specialized psychiatric treatment or care at any time material hereto." AR at 90; *see Orn*, 495 F.3d at 631; *Reed*, 270 F.3d at 845. As defendant points out, Dr. Patel is "a non-psychiatrist" who "worked at the California Chest & Medical Center, a practice specializing in pulmonary medicine, critical care, hyperbaric medicine, and internal medicine." Def.'s JS at 5 (citing AR at 550).

The medical records from Dr. Gevorkian and Dr. Lasky are also non-material because they postdate October 16, 2009, the relevant time period. *See* 20 C.F.R. § 416.1470(b); *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (medical opinion submitted by the claimant "is all the less persuasive since it was obtained by [the claimant] only after the ALJ issued an adverse determination"). The earliest medical records from Dr. Gevorkian and Dr. Lasky are from December 14, 2009 and January 11, 2010, respectively. *See* AR at 629, 646.

Although not all of the new evidence is material, the new evidence does demonstrate continued treatment for symptoms related to the worsening of

10

plaintiff's Marfan syndrome. Consequently, there is a reasonable possibility that the newly submitted evidence would have changed the ALJ's finding that there were no changed circumstances in plaintiff's condition indicating a greater disability. Accordingly, the ALJ's finding based upon *Chavez* lacks substantial support in the record as a whole. *See Ramirez*, 8 F.3d at 1452.

**B.    The ALJ Articulated Clear and Convincing Reasons in Assessing Plaintiff's Subjective Complaints and Credibility**

Plaintiff argues that the ALJ failed to properly assess his credibility. *See* Pl.'s JS at 20-24, 25-26. Specifically, plaintiff maintains that the ALJ failed to articulate clear and convincing reasons for rejecting plaintiff's pain and limitation testimony. *Id.* at 23-24. Having carefully reviewed the record, the court disagrees with plaintiff.

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain" (citation omitted)).

Instead, once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work

11

record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not explicitly find evidence of malingering. *See generally* AR at 97-98. Thus, in rejecting plaintiff's credibility the ALJ was required to articulate clear and convincing reasons. *See Benton*, 331 F.3d at 1040. The court is persuaded that the ALJ provided clear and convincing reasons for rejecting plaintiff's credibility.

First, the ALJ found that the objective medical evidence does not support plaintiff's alleged degree of disability. *See* AR at 97; *see also Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("the lack of objective medical evidence supporting [the claimant's] claims . . . constitute[s] substantial evidence in support of the ALJ's negative credibility determination"); *Thomas*, 278 F.3d at 959 (lack of objective medical evidence supporting descriptions of pain and limitations negatively affected claimant's credibility regarding her inability to work). Certainly, a lack of objective evidence supporting plaintiff's symptoms cannot be the sole reason for rejecting plaintiff's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). But it can be one of several factors used in evaluating the credibility of plaintiff's subjective complaints. *Id.*

Second, the ALJ found that plaintiff's credibility is undermined by evidence in the record of symptom exaggeration. AR at 97; *see Tonapetyan*, 242 F.3d at 1148 (ALJ properly discredited claimant's subjective complaints based upon her tendency to exaggerate her symptoms). The ALJ noted that he was "deeply troubled by [plaintiff's] questionable performance on the MMPI." AR at 97. Plaintiff "produced an invalid profile, indicating an effort to report false psychiatric symptoms or symptom exaggeration." *Id.* (citing *id.* at 521). The ALJ further noted that his "concerns in this regard are only heightened by the fact that [plaintiff] alleges that he experiences two major asthma attacks, weekly," but that plaintiff's

allegations are "completely unsupported by medical evidence." *Id.* (citing *id.* at 176 (plaintiff claims that he has "about 2 major [asthma] attacks per week")). The ALJ also found that plaintiff's testimony regarding the side effects of his medications was to a large extent exaggerated. *Id.* ("I find few, if any, reports by medical providers that [plaintiff] has been experiencing significant side effects associated with his medications.  Surely, if he were truly experiencing significant side effects, his treatment records would not only reflect this, but also his doctors' efforts to modify his medications to remedy or reduce these effects.").

In rejecting plaintiff's credibility, the ALJ also focused on the fact that, despite alleging that he is entirely disabled, plaintiff "not only obtain[ed] an Associate's degree, but [also] gained admission to the University of California, San Diego and obtained a bachelors degree in only two years, indicating that he was able to maintain a full course load." AR at 97.  The ALJ further noted that because plaintiff's intelligence quotient scores reveal only modest intelligence, at best, "it is doubtful that this could have been accomplished without considerable hard work and academic effort." *Id.*; *see also id.* at 453 (plaintiff "was an undergraduate at the University of California, San Diego Sixth College from Fall 2004 through Spring 2006, graduating with a Bachelor of Arts degree").  But the record reflects that plaintiff only graduated from college with substantial assistance and accommodation.  *See id.* at 453.  Consequently, plaintiff's academic achievement is not inconsistent with his claimed disabilities and is not a convincing reason to discount his credibility.

Although this court disagrees with certain aspects of the ALJ's credibility findings, on balance the court finds that the ALJ provided adequate clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's subjective complaints of pain and limitation.  *See Batson*, 359 F.3d at 1195-97 (ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but such error was harmless because the ALJ's remaining reasons

and ultimate credibility determination were adequately supported by substantial evidence in the record); *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (the ALJ's error did not "negate the validity" of his ultimate credibility finding, and the ALJ's decision remains "legally valid, despite such error") (internal quotation marks and citation omitted)).  Nonetheless, in light of the new evidence that the ALJ will have to consider on remand, the ALJ should reconsider his adverse credibility finding.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ did not have the benefit of reviewing the newly submitted and material medical evidence prior to finding that plaintiff failed to rebut the presumption of continuing non-disability. On remand, the ALJ shall assess the medical opinions in the newly submitted evidence and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions.  And, if necessary, the ALJ shall obtain additional information and clarification regarding plaintiff's functional

limitations. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

Dated: March 6, 2012

_____
SHERI PYM
UNITED STATES MAGISTRATE JUDGE